[1]UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------

| | |
|---|---|
| DANTE EVANS, on behalf of himself and all others similarly situated, | Case No. 1:25-cv-7141 |
| Plaintiff, | **CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL** |
| v. | |
| NVIDIA, CORPORATION, | |
| Defendant. | |

----------------------------------------------------------------

     Plaintiff, **DANTE EVANS** ("Plaintiff" or "Mr. Evans"), on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, JOSEPH & NORINSBERG, LLC, as and for their class action complaint upon Defendant, NVIDIA, CORPORATION, ("NVIDIA" or "Defendant"), hereby alleges as follows:

## INTRODUCTION

    1.   **Plaintiff Dante Evans** is a legally blind individual whose central visual acuity with correction is less than or equal to 20/200, as documented in Exhibit A – *Legally Blind Diagnosis*, dated July 12, 2024. Plaintiff relies on screen-reading software to access digital content and navigate websites. Despite his visual impairment, Mr. Evans is an active participant in online communities and enjoys reading, writing, and exploring technology—including gaming and digital media—where accessible platforms allow. He uses the terms "blind" and "visually impaired" interchangeably to describe his condition, which limits but does not eliminate his

engagement with digital environments.

2.       Plaintiff brings this action against **NVIDIA Corporation** for violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. NVIDIA, a global leader in graphics processing and artificial intelligence technologies, operates websites and digital platforms that are not fully accessible to screen-reader users. As a result, blind individuals—including Plaintiff—are denied full and equal access to the company's services. NVIDIA owns and operates the public-facing website **www.nvidia.com**, which is functionally integrated with its digital ecosystem, including product purchasing, driver downloads, developer resources, and promotional content. Plaintiff attempted to access these services but was prevented from doing so due to persistent accessibility barriers.

3.       Plaintiff is legally blind and relies on screen reader technology to navigate digital interfaces. He attempted to access Defendant's website, **www.nvidia.com**, to order graphics processing products, download essential drivers, and review promotional content tailored to his interests in accessible technology and audio-based gaming. As someone who actively explores gaming experiences designed for blind users—such as audio-only games and titles with enhanced sound navigation—Plaintiff sought information about NVIDIA's hardware and software that support immersive audio environments. However, he was repeatedly denied meaningful access due to widespread accessibility barriers. These include unlabeled buttons, missing alternative text, low-contrast visual elements, and ambiguous link structures, all of which violate the **Web Content Accessibility Guidelines (WCAG) 2.1 Level AA**, the recognized industry standard for digital accessibility. Plaintiff remains eager to return to the site once it is remediated, as it offers a streamlined purchasing and support experience that aligns with his specific needs and interests.

2

4.      Plaintiff brings this civil action against Defendant for their failure to design, construct, maintain, and operate the Defendant's Website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people. Defendant's denial of full and equal access to the Website, www.nvidia.com, and therefore its denial of the goods and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

5.      Based on a 2020 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired,[2] including 2.0 million who are blind. According to a 2016 report published by the National Federation of the Blind, approximately 418,500 visually impaired persons live in the State of New York.[3]

6.      Congress provides a clear and national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, both New York State and New York City law require places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

7.      Defendant's Website is not equally accessible to blind and visually impaired consumers; therefore, Defendant violates the ADA. Plaintiff now seeks a permanent injunction to

---

[2] *See* United States Census Bureau Report.

[3] *See* 2016 National Federation for the Blind Report.

cause a change in the Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

**JURISDICTION AND VENUE**

8.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq*.

9.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.)("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") & § 296 et seq.; and the New York State Civil Rights Law, Article 4, § 40-c and § 40-d ("NYCRL").

10.    Venue is proper in this District under 28 U.S.C. §1391(b) and (c), in that Defendant conducts and continues to conduct a substantial and significant amount of business in this District, via the Internet and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize, on several occasions, the subject Website, www.nvidia.com, within his home in Bronx County, New York, located within this Judicial District.

11.    Defendant NVIDIA Corporation is a multinational technology company headquartered in Santa Clara, California. It is best known for its development and sale of high-performance graphics processing units (GPUs), including the **GeForce RTX** and **GTX series**, which are widely used in gaming, creative production, and AI computing. NVIDIA also offers **driver downloads**, **developer platforms** such as **CUDA** and **Omniverse**, and **enterprise**

4

**solutions** for data centers and autonomous systems. The website at issue, **www.nvidia.com**, serves as the central hub for accessing these products and services, and is maintained by Defendant's internal digital teams.

12.    Plaintiff, a Bronx County resident, attempted to access **www.nvidia.com** to research and purchase a **GeForce RTX graphics card** compatible with his system, download the necessary **drivers** to enable functionality, and explore **developer tools** that support audio-based gaming environments. Because these services are delivered through Defendant's website, and Plaintiff engaged with them from within the **Southern District of New York**, venue is proper and jurisdiction is established.

13.    Plaintiff seeks declaratory and injunctive relief to compel Defendant to remediate its website, implement ongoing accessibility monitoring, and ensure compliance with Federal, State and City Laws. This action is not merely about technical compliance—it is about securing lawful access to essential digital services. Plaintiff's interest in accessible gaming and creative technology makes access to NVIDIA's offerings—particularly its **GeForce RTX GPUs**, **audio-enhancing drivers**, and **developer platforms**—both meaningful and necessary.

14.    Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered to the general public on Defendant's Website.  Specifically, he was unable to complete a purchase of a **GeForce RTX 4060 graphics card**, access **driver downloads** for his existing NVIDIA hardware, and review **promotional bundles** that included gaming software optimized for NVIDIA GPUs. These barriers have deterred Plaintiff from returning to the site and continue to exclude him from engaging with NVIDIA's digital ecosystem.

15.    The **United States Department of Justice Civil Rights Division** has stated that,

5

"[t]he Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web." (See *Guidance on Web Accessibility and the ADA*.) Plaintiff is unable to utilize a computer or device without the assistance of screen-reading software, such as **NonVisual Desktop Access (NVDA)**, and was unable to navigate Defendant's website due to its noncompliance with accessibility standards.

16.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202, and Plaintiff respectfully requests that the Court affirm Defendant's obligations under the ADA and compel remediation of the website to ensure equal access to NVIDIA's products and services.

## NATURE OF ACTION

17.     The Internet has become an indispensable tool for accessing information, conducting business, and engaging in everyday activities such as shopping, learning, banking, and creative expression. For blind and visually impaired individuals like Plaintiff Dante Evans, the digital world is not a luxury—it is a gateway to independence. Mr. Evans relies on the Internet to pursue his interests in **artificial intelligence**, **accessible gaming**, and **podcasting**, and to support his recent entrepreneurial initiative aimed at improving food access in underserved communities across **Brooklyn, Bronx, and Queens**.

18.     Plaintiff recently obtained a **General Vendor License** from the **New York City Department of Consumer and Worker Protection (DCWP)** to launch a community-based produce initiative. While he does not intend to personally sell fruits and vegetables, his goal is to **hire and train other blind individuals**, equipping them with economic literacy and digital tools

6

to manage inventory, track sales, and operate independently. Using accessible software platforms, Plaintiff plans to teach basic economics and business skills, ultimately forming a company that empowers blind New Yorkers to achieve financial independence through entrepreneurship. Access to NVIDIA's products and services—including **graphics cards**, **AI platforms**, and **developer tools**—is essential to building the digital infrastructure that supports this mission. Defendant's inaccessible website has impeded Plaintiff's ability to research and acquire the necessary technology to advance this initiative.

19.    Blind and visually impaired users of Windows-enabled computers, including Plaintiff Dante Evans, rely on screen-reading software to navigate digital environments. These programs convert visual content into speech or Braille output, allowing users to independently access websites and applications. While some screen readers require purchase, others—such as the widely used **NonVisual Desktop Access (NVDA)**—are freely available and form the backbone of Plaintiff's daily digital interactions. Mr. Evans is an **avid browser of the Internet**, using NVDA with fluency and precision. He leverages its full capabilities to research technology, manage documents, explore gaming platforms, and develop podcast content. For example, Evans routinely uses NVDA to navigate product specification pages for graphics cards, comparing features such as **CUDA core counts**, **memory bandwidth**, and **ray tracing capabilities** to determine which GPU best suits his audio production needs. He also uses NVDA to edit podcast scripts in real time, listening to each line as it's read aloud and making adjustments to tone, pacing, and clarity—all without visual input. His proficiency with NVDA makes him acutely aware of when a website fails to meet accessibility standards, as he immediately detects missing labels, broken navigation structures, and inaccessible dynamic content.

20.    For screen-reading software to function properly, the information on a website must be capable of being rendered into text. If the website's code does not support this conversion, blind and visually impaired users are unable to access the same content available to sighted users. Plaintiff Dante Evans encountered this barrier when attempting to review **product specifications**, **driver compatibility**, and **developer documentation** on www.nvidia.com, all of which were presented in formats inaccessible to his screen reader.

21.    Screen readers operate by gathering information from the operating system, browser, and website code, then interpreting it using sophisticated rules. They present content through **text-to-speech (TTS)**, **Braille displays**, and other output mechanisms. When websites fail to follow accessibility protocols, these tools cannot interpret or relay the content accurately. Plaintiff's experience with NVIDIA's website included missing labels, ambiguous links, and inaccessible navigation menus that rendered key product and support pages unusable—particularly those related to **GeForce RTX cards**, **CUDA developer tools**, and **AI platform documentation**.

22.    The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG) 2.1, which provide a comprehensive framework for making websites accessible to blind and visually impaired users. These guidelines are widely adopted by large corporations and government agencies. Defendant NVIDIA Corporation has failed to implement these standards on its primary website, **www.nvidia.com**, resulting in the exclusion of Plaintiff and others from accessing critical information and services related to technology, gaming, and digital entrepreneurship.

23.    Non-compliant websites present a range of barriers to blind users. Plaintiff

8

encountered several of the following common issues while attempting to engage with NVIDIA's website, including but not limited to:

- Missing text equivalents for non-text elements
- Inaccessible forms and navigation structures
- Ambiguous link text and unlabeled buttons
- Inaccessible PDFs and dynamic content
- Lack of keyboard focus indicators and programmatically determinable UI elements
- CAPTCHA prompts without accessible alternatives
- Improperly nested markup and duplicate attributes

24.    These barriers prevented Plaintiff from completing tasks such as comparing GPU features, downloading drivers, and accessing promotional bundles relevant to his podcasting and gaming interests.

25.    Websites are dynamic platforms, with content and features updated frequently. A one-time fix is insufficient to ensure lasting accessibility. Plaintiff seeks not only remediation of the current barriers but also a commitment to **ongoing accessibility monitoring**, including automated testing and real-world validation by disabled users. Without such measures, Defendant's website will continue to exclude blind individuals from meaningful participation in its digital ecosystem—undermining Plaintiff's efforts to build a technology-driven company that empowers blind New Yorkers through economic independence.

## STANDING

26.    Plaintiff, DANTE EVANS, is a blind, visually-impaired handicapped person and a

member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and

the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and NYCHRL. For

Plaintiff to access the Internet, he must utilize a computer that contains a screen-reader, such as

"NVDA for Windows."

27.    Screen reader "software translates the visual Internet into an auditory equivalent.

At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art*

*Materials, LLC,* 286 F.Supp.3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user
> to effectively use websites. For example, when using the visual internet, a seeing
> user learns that a link may be "cOmniverse licked," which will bring her to another
> webpage, through visual cues, such as a change in the color of the text (often text
> is turned from black to blue). When the sighted user's cursor hovers over the link,
> it changes from an arrow symbol to a hand.
>
> The screen reading software uses auditory—rather than visual—cues to relay this
> same information. When a sight-impaired individual reaches a link that may be
> "clicked on," the software reads the link to the user, and after reading the text of the
> link, says the word "clickable."…Through a series of auditory cues read aloud by
> the screen reader, the visually impaired user can navigate a website by listening and
> responding with her keyboard."

*Id.* at 373. *see also* American Federation for the Blind, Screen Readers,

https://www.afb.org/blindness-and-low-vision/using-technology ("Computer Access for People

Who Are Blind or Have Low Vision," & "Using Technology") (Last accessed on July 25, 2025;

estimating 26.0 million adult Americans reported sight deficiency).

28.    **NVIDIA Corporation**, founded in 1993 by Jensen Huang (currently CEO), Chris

Malachowsky, and Curtis Priem, was established to pioneer graphics-based computing, with a particular

focus on video games—a field the founders recognized as both computationally demanding and

commercially scalable. Gaming served as the company's initial "killer app," generating revenue to fund

research and development into broader computational challenges. Over time, NVIDIA expanded its offerings to include **graphics cards**, **AI platforms**, and **developer tools** that support a wide range of creative and technical applications. These products are directly relevant to Plaintiff Dante Evans's interests in **accessible gaming**, **podcast production**, and **digital entrepreneurship**.

29.    Today, it is one of the most recognized software companies worldwide, producing graphics cards, AI platforms, developer tools, and enterprise solutions. Defendant does not operate any physical retail stores. Rather, they rely upon: a) direct online sales through their NVIDIA marketplace, www.nvidia.com; b) Retail partners such as Amazon, BestBuy, Newegg; B&H Photo, and Walmart to name a few.

30.    Defendant clearly dominates the GPU market with -92% share in discrete graphics; Powers 75% of top global supercomputers; leads in AI training chips (preferred by OpenAI; Meta and Google.) NVIDIA chips are embedded in laptops, desktops, servers, and autonomous vehicles sold by third-party manufacturers (e.g., Dell, HP, ASUS, MSI). With over 36,000 employees worldwide, their annual revenue is approximately $130.5 billion. Their net income is $72.9 billion; with an operating income at $81.5 billion.

31.    Despite this staggering commercial success and the widespread publication of articles, guidance, and enforcement actions concerning the mandatory nature of digital accessibility under the ADA, Defendant's Website is woefully inadequate, containing a plethora of access barriers.

32.    On July 3, 2025, Plaintiff Dante Evans visited www.nvidia.com and navigated to the "Shop" section to explore the GeForce RTX 4060 graphics card. He needed this specific model to support his podcast production, which requires high-performance audio rendering and

compatibility with editing software already installed on his system. NVIDIA was the only viable option because its RTX line includes AI-enhanced audio features and driver support that align with Plaintiff's existing workflow. While reviewing the product page, Evans encountered a specification table built with dynamic elements that were not coded for screen reader access. Key details such as clock speed, memory type, and power requirements were embedded in visual containers without text equivalents. The "Add to Cart" button lacked a programmatically determinable label, and the quantity selector relied on mouse-hover functions that could not be activated using keyboard navigation. These barriers prevented Plaintiff from completing the purchase or evaluating whether the product met his needs.

33.    On July 14, 2025, Plaintiff Dante Evans visited www.nvidia.com and navigated to the "Studio Products" section to explore the NVIDIA Broadcast app. He was highly interested in this product because it offers real-time noise removal, room echo reduction, and audio enhancement features critical to his podcast production workflow. Evans selected NVIDIA Broadcast over other third-party audio tools because it is optimized for RTX GPUs and integrates directly with his existing hardware. While attempting to download the application and review its system requirements, Evans encountered multiple access barriers. The download button was not labeled for screen reader access, and the system requirements were presented in a visual chart that lacked text alternatives. Additionally, the installation guide relied on mouse-dependent navigation, including hover-triggered tooltips and clickable icons that could not be activated using keyboard commands. These issues prevented Evans from downloading the software or confirming its compatibility with his setup.

34.    Despite multiple attempts on May 3, 2025, Plaintiff was unable to complete his

12

order due to persistent accessibility barriers, which prevented him from identifying, selecting, and purchasing the items he needed. He returned to the website on July 21, 2025, and again on August 5, 2025, actively seeking to complete these tasks. On each occasion, he was blocked by the same and additional accessibility barriers. Plaintiff remains interested in using the website and intends to return once it is made accessible—not out of curiosity, but out of necessity. For him, Defendant's website is not a convenience; it is a lifeline. Like millions of Americans, Plaintiff relies on websites to perform essential tasks—whether locating products, checking availability, downloading drivers, or accessing time-sensitive promotions. These digital platforms are not optional; they are integral to daily life. For individuals with disabilities, the ability to navigate a website independently is a matter of dignity, autonomy, and equal participation in the modern marketplace. Plaintiff's intent was simple and sincere: to use the website as any other customer would—without barriers, without frustration, and without having to ask for help.

35.    Without accessible digital access, he is effectively barred from performing these essential tasks. Plaintiff remains interested in using Defendant's website and intends to return to it, once it is made accessible, not out of curiosity, but out of necessity. Stop & Shop's website is not merely informational; it is a transactional gateway to its physical stores. Plaintiff's inability to access these integrated services constitutes a denial of equal access under Title III of the ADA and presents a credible threat of future harm.

### Power Mapper "Sort Site" Audit

36.    On August 20, 2025, Plaintiff's in-house accessibility expert conducted a comprehensive audit of www.nvidia.com using PowerMapper's SortSite program. The audit included both broken link analysis and accessibility validation across consumer-facing sections of

the site, including the "Shop," "Drivers," "Studio Products," and "Broadcast App" pages. The findings revealed widespread and persistent violations of the Web Content Accessibility Guidelines (WCAG) 2.1 and Section 508 of the Rehabilitation Act.A technical audit of www.nvidia.com was conducted on August 18, 2025, using WAVE ("web accessibility evaluation tool") which corroborated Plaintiff's declaration and which revealed:

37.    The broken link report identified over 2,100 pages containing links with empty href or src attributes, including critical product pages such as GeForce graphics cards, G-Sync monitors, and AI-on-RTX solutions. These broken links caused JavaScript errors and prevented screen readers from interpreting or activating key navigation elements. Several pages also contained anchor links targeting non-existent IDs, rendering skip links and internal navigation unusable for blind users relying on keyboard access.

38.    The accessibility validation report uncovered 53 Level A violations across 2,532 pages, including autoplaying videos without pause controls, missing alt text, improperly structured tables, and mouse-dependent controls lacking keyboard equivalents. For example, the "Broadcast App" page included visual charts and download buttons that could not be activated via keyboard navigation. Numerous pages used placeholder alt text such as 'voxel51', 'chris 177uk', or 'Cyberpunk2077', which screen readers read aloud instead of meaningful descriptions, obstructing comprehension for blind users.

39.    The audit also revealed structural markup errors that interfere with screen reader functionality, including duplicate IDs, empty button elements, and form controls with no accessible name. Over 800 pages contained untagged PDFs, making critical documentation inaccessible. Additionally, the tab order on many pages did not follow a logical sequence, causing

confusion and disorientation during keyboard navigation.

40.     These findings constitute conclusive evidence of inaccessibility. The violations are not isolated or superficial—they are systemic, recurring across thousands of pages and directly impact the ability of blind users to identify, select, and purchase products, download drivers, and access support materials. The presence of these barriers confirms that Defendant's website is not equally accessible and fails to meet the minimum standards required under Title III of the ADA.

41.     The accessibility barriers identified—such as missing alt text on product images, non-descriptive link text (e.g., "click here"), unlabeled form fields in checkout and login processes, keyboard traps, inaccessible modal dialogs, and improper heading structures—were not isolated glitches. They were systemic failures that denied Plaintiff the ability to browse, evaluate, and purchase products with independence and dignity. These barriers violate the Web Content Accessibility Guidelines (WCAG) 2.1 Level AA and constitute unlawful discrimination under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182.

42.     Plaintiff's experience on www.nvidia.com was not merely inconvenient—it was exclusionary. Each attempt to access product pages, download drivers, or review system requirements ended in frustration, as unlabeled buttons, inaccessible modals, and mouse-dependent features blocked his path. He was unable to compare similar products, confirm compatibility, or complete transactions independently. These barriers functioned as digital walls, preventing him from participating in the same online experience that sighted users enjoy.

43.     Plaintiff's intent to return to www.nvidia.com is not speculative—it is driven by necessity. He relies on NVIDIA's products and software to support his podcast production, gaming, and digital training initiatives. The website remains uniquely positioned to meet these

needs, yet until the digital barriers are removed, Plaintiff remains excluded from a platform that promotes innovation and accessibility but fails to deliver it to blind users.

44.    Plaintiff Dante Evans will return to www.nvidia.com because it is the only platform that offers the specific combination of hardware, software, and support services he requires to perform essential tasks related to his professional and personal life. Evans is a blind individual who produces audio content, engages in digital training for other blind users, and relies on high-performance computing tools to maintain his workflow. NVIDIA's GeForce RTX graphics cards are uniquely compatible with the editing software and accessibility tools he uses, and the company's proprietary drivers and applications—such as the NVIDIA Broadcast app—are not available through third-party vendors or alternative platforms. The website is the exclusive source for downloading updated drivers, accessing product documentation, and confirming system compatibility. Evans has attempted to use other retail platforms, including Amazon, Best Buy, and Newegg, but these sites do not provide the same level of technical detail, driver access, or direct integration with NVIDIA's support infrastructure. Moreover, NVIDIA's website is the only location where Evans can verify firmware updates, troubleshoot compatibility issues, and access AI-enhanced features that are critical to his podcast production and training modules. His intent to return is not speculative or generalized—it is driven by necessity, and it is tied to specific tasks that cannot be completed elsewhere. Until the website is made accessible, Evans remains excluded from a digital platform that is essential to his autonomy, productivity, and equal participation in the modern marketplace. His return is imminent, repeated, and unavoidable.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff Dante Evans brings this action on behalf of himself, and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access www.nvidia.com and were denied equal access to its products, services, and support due to persistent digital accessibility barriers during the relevant statutory period.

46.     Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals residing in the City and State of New York who have attempted to access www.nvidia.com and were similarly denied equal access to its offerings due to the same systemic barriers.

47.     Common questions of law and fact exist among the Class, including:

- Whether www.nvidia.com qualifies as a "public accommodation" under Title III of the ADA;
- Whether Defendant's website constitutes a "place or provider of public accommodation" under the NYCHRL;
- Whether the website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to NVIDIA's products, services, and support;
- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace.

48.     Plaintiff's claims are typical of the Class. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms. He encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

49.     Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has

no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

50.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

51.     Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

52.     Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use www.nvidia.com and faced exclusion.

### FIRST CAUSE OF ACTION
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

53.     Plaintiff, DANTE EVANS, on behalf of himself and the Class Members, repeats and  realleges every allegation of the preceding paragraphs as if fully set forth herein.

54.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

55.     Defendant's  Website that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

18

56.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

57.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

58.    The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

59.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and

19

incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

60.    Plaintiff, DANTE EVANS, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

61.    N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

62.    Defendant is subject to NYCHRL because it owns and operates the Website www.nvidia.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

63.    Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

64.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating

20

based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

65.     Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

    a.    constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

    b.    constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

    c.    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

66.     Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

67.     As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

68.     Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

21

69.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

70.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

71.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**THIRD CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

72.    Plaintiff, DANTE EVANS, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

73.    At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

74.    Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

75.    Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, within the meaning of Article 15 of N.Y. Executive Law § 292(9).  Defendant is a "person" within the meaning of Article 15 of N.Y.

Executive Law § 292(1).

76.    Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

77.    Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

78.    Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

79.    Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities.  This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device.  Article

23

15 of N.Y. Exec. Law § 296(2)(c).

80.     The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

81.     Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

82.     Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

83.     Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

84.     Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

24

**FOURTH CAUSE OF ACTION**
**(Violation of New York State Civil Rights)**
**("NYCRL")**

85.    Plaintiff, DANTE EVANS, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

86.    Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

87.    Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

88.    No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

89.    § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

90.    Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as

25

Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

91.    Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

92.    Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

93.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

94.    Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

95.    Plaintiff, DANTE EVANS, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

96.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access

barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

97.    A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a.    A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.    A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.    An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.    Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f.    Pre-judgment and post-judgment interest;

g.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.   Such other and further relief as this Court deems just and proper.

### <u>**DEMAND FOR TRIAL BY JURY**</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
       September 11, 2025

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

<u>*/s/ Robert Schonfeld*</u>
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com

28